ACCEPTED
12-14-000263-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
5/14/2015 11:16:35 AM
CATHY LUSK
CLERK

No. 12-14-00263-CR

IN THE COURT OF APPEALS

TWELFTH APPELLATE DIVISION

TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
5/14/2015 11:16:35 AM
CATHY S. LUSK
Clerk

---

JEFFREY ARLEN QUINN

VS.

THE STATE OF TEXAS

---

APPEAL FROM 3RD JUDICIAL DISTRICT COURT

HENDERSON COUNTY, TEXAS

CAUSE NO. C-20,818

---

BRIEF FOR APPELLANT
JEFFREY ARLEN QUINN

---

NO ORAL ARGUMENT REQUESTED

John L. Youngblood
130 East Corsicana Street, Suite 300
Athens, Texas 75751
Telephone: (903) 675-5188
Facsimile: (903) 677-3902
Attorney for Jeffrey Arlen Quinn

# Table of Contents

Index of Authorities............................................................................................. ii - iii

Statement of the Case ......................................................................................... 1

Issue Presented .................................................................................................. 1

Statement of Facts .........................................................................................2 - 5

Summary of the Argument.............................................................................5 - 7

Argument        .............................................................................................8 - 16

Prayer           ................................................................................................. 16

Index of Authorities

CASES:

Alamanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1984) ................................. *6*

Arnold v. State, 786 S.W.2d 295 (Tex. Crim. App. 1990) ................................... *13*

Bolden v. State, 73 S.W.3d 428 (Tex. App. – Houston [1ˢᵗ Dist.] pet. ref'd) ..... *7, 11*

Boones v. State, 170 S.W.3d 653 (Tex. App. – Texarkana, 2005) ............... *7, 12, 15*

Brown v. State, 122 S.W.3d 794 (Tex. Crim. App. 2003) ........................................ *6*

Delgado v. State, 235 S.W.3d 244 (Tex. Crim. App. 2007) ................................. *10*

Grigsby v. State, 833 S.W.2d 573 (Tex. App. – Dallas, 1992 pet. ref'd) ............... *14*

Hernandez v. State, 2005 Tex. App. LEXIS 10076 (Tex. App. – Dallas, 2005) .... *14*

Luquis v. State, 72 S.W.3d 355 (Tex. Crim. App. 2002) ........................... *5, 11, 14*

Ngo v. State, 175 S.W.3d 738 (Tex. Crim. App. 2005) ........................................ *9*

Rudd v. State, 921 S.W.2d 370 (Tex. App. – Texarkana 1996, pet. ref'd) .............. *6*

Sakil v. State, 287 S.W.3d 23 (Tex. Crim. App. 2009) ......................................... *9*

Sanchez v. State, 243 S.W.3d 57 (Tex. App. – Houston [1ˢᵗ Dist.] 2007 pet. ref'd) ...................................................................................................................... *12*

Saunders v. State, 817 S.W.2d 688 (Tex. Crim. App. 1991) ................................ *10*

Sponsler v. State, 2013 Tex. App. LEXIS 13812 (Tex. App. – Austin, 2013) ... *9, 10*

Swearingen v. State, 270 S.W.3d 804 (Tex. App. – Austin 2008, pet. ref'd) .......... *9*

Taylor v. State 332 S.W.3d 483 (Tex. Crim. App. 2011) ....................................... *10*

Williams v. State, 975 S.W.2d 375 (Tex. App. – Waco, 1998 pet. ref'd) .............. *12*

STATUTE:

<u>Tex.CodeCrim.Proc. 37.07(4)(a)</u>........................................................................... *5, 6, 9*

## STATEMENT OF THE CASE

Jeffrey Arlen Quinn (hereinafter Appellant) was indicted by a Henderson County Grand Jury on or about November 7, 2013 for the offense of Evading Arrest With a Motor Vehicle. (Clerk's Record Page 1). The indictment contained an enhancement paragraph alleging Appellant had previously been convicted of the offense of Manufacture/ Delivery of Controlled Substance. (Id.). The punishment range as indicted was for a second degree felony.

A jury trial commenced on June 17, 2014. (Clerk's Record at 33). The jury returned a guilty verdict to Evading Arrest With a Motor Vehicle as charged in the indictment and made an affirmative finding to the special issue regarding a deadly weapon. (C.R. at 24- 25). The punishment phase of the trial began before the jury on June 19, 2014. (C.R. at 34). After Appellant entered a plea of "True" to the enhancement, and after receiving evidence offered by the State, the jury deliberated before returning a sentence of seventeen (17) years confinement in Texas Department of Criminal Justice - Institutional Division and no fine. (C.R. at 33).

## ISSUE PRESENTED

I.    The trial court committed reversible error when it submitted an incorrect charge on punishment to the jury in violation of Texas Code of Criminal Procedure, Article 37.07(4)(a) because the jury was not instructed that it could not accurately be predicted how the good conduct time and parole laws would be calculated and that they could not consider the effects of good conduct time and parole in Appellant's case.

## STATEMENT OF FACTS

On October 21, 2013, Rodney Henderson was working as Interim Police Chief for the City of Tool Police Department. (Reporter's Record Volume 2, Page 105). At around 5:00 p.m., Henderson was on duty and had made city deposits to a local bank. (R.R. Vol. 2, Page 105- 106). After leaving the bank, Henderson stopped at an auto parts store to have his police vehicle looked at. (Id.). After leaving the store, he was heading back to the City of Tool. R.R. Vol. 2, Page 108).

While heading south on State Highway 274, Henderson observed a white Ford Ranger "come into my lane of traffic." (Reporter's Record Volume 2, Page 108- 109). Henderson took evasive action and exited partially on the roadway and in the ditch. (Id.). When he turned around, the officer initiated his lights to stop the vehicle. (R.R. Vol. 2, Page 110). The white Ford Ranger sped up as Henderson was in pursuit. (R.R. Vol. 2, Page 111).

Officer Henderson testified that as the vehicle initially approached him, causing him to slow down, he observed a male driving and a female sitting in the passenger seat. (Reporter's Record Volume 2, Pages 116 – 117). Other police units were involved in the pursuit at various stages.

The Ford turned east onto State Highway 334 in Gun Barrel City. (Id.). The pursuit continued down several roads and through a residential neighborhood. (R.R. Vol. 2, Pages 110 – 122). At one point, Henderson testified he was traveling 105

Page 2

miles per hour during the pursuit. (R.R. Vol. 2, Page 113). The Ford eventually came to a stop in a driveway after running over a street sign pole. (R.R. Vol. 2, Page 123). When the officer approached the truck, the doors were open and the occupants were gone. (Id.).

After observing there were no occupants remaining in the vehicle, Henderson and another officer attempted to search outside buildings on the property for the occupants. (Reporter's Record Volume 2, Page 137). They observed a female laying in the fetal position in the floor of a vehicle covered with a tarp. (Id.). The female did not have any identification but gave the officers the name Kristy Dodd. (R.R. Vol. 2, Page 139). A search of a purse in the abandoned Ford revealed an ID identifying the female as Kristy Kidan. (R.R. Vol. 2, Page 140).

As Henderson began a search for the other occupant, one of the deputies reported that he had a suspect in custody. (Reporter's Record Volume 2, Page 141). Henderson testified that Kristy Kidan had an active parole warrant and, further, there was suspected dope found by the pond where the defendant was located. (R.R. Vol.2, Pages 167 – 168).

Deputy Brad Beddingfield testified that he was assisting in the execution of a search warrant when he heard sirens and squealing tires approaching from a distance. (Reporter's Record Volume 3, Page 95). Beddingfield drew his weapon believing that the white Ford Ranger looked as if it was going to intentionally strike him. (R.R.

Page 3

Vol. 3, Page 96). He did not fire because of bystanders and a female passenger in the vehicle. (Id.). He noticed the driver to be a white male wearing a white t-shirt and a ball cap. (R.R. Vol. 3, Page 97). Beddingfield and other officers joined in the pursuit before the Ford crashed. (Id.).

Beddingfield testified that after seeing the crashed out vehicle, he drove down a dirt road toward a pond where he saw a suspect matching the description of the driver he had earlier seen. (Reporter's Record Volume 3, Pages 100- 101). The suspect complied with orders and waited for Beddingfield to cross the pond and detain him. He noticed a bag of green leafy substance and several plastic baggies. (R.R. Vol. 3, Page 101 – 102).

Kristy Kardin testified during the trial that she was currently serving a sentence for "manufactury (sic) and delivery." (Reporter's Record Volume 3, Page 185). She testified that on October 21, 2013 she was a passenger in a truck driven by her friend Arlen. (R.R. Vol. 3, Page 187). She testified that at the time of the pursuit she was on pills and did not recall much – including whether she was driving or not. On further direct examination, she acknowledged that she had previously met with the prosecutor and told her (the prosecutor) that she had not been driving. (R.R. Vol. 3, Page 194). The defense did not call any witnesses.

During the punishment phase of the trial, the defendant pled true to the allegation alleged as an enhancement. (Reporter's Record, Volume 4, Page 36). The

State also introduced several prior convictions during its case in chief. The defense did not present any witnesses but asked to re-open evidence to allow the Defendant to testify after all of the evidence was received and the charge read. The Court denied the request as untimely. (R.R. Vol. 4, Page 45).

## SUMMARY OF THE ARGUMENT

Texas Code of Criminal Procedure, Article 37.07 provides mandatory instructions to trial judges in the preparation of punishment charges to juries. That these are mandatory legislative instructions is supported by the fact that the instruction is included within quotation marks and further, through the use of the language "the court shall charge the jury in writing as follows . . . " See Luquis v. State, 72 S.W.3d 355, at 363 (Tex. Crim. App. 2002).

In the instant case, Appellant's charge is woefully incomplete, in that it completely omits the following language which is specifically set forth in the statute:

> "It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.
> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant." See Code of Criminal Procedure Article 37.07(4)(a).

So, while specifically instructing and advising the jury about the parole laws as they relate to the accumulation of "good conduct time", the charge in the instant

case completely fails to instruct the jury - and fails to forbid them from considering these factors - in assessing punishment in this case. Additionally, even within the charge submitted to the jury, the included paragraphs do not factually tract the legislatively mandated language and conspicuously omit certain language concerning the mandatory minimum that the Defendant would be required to serve. That is, nothing in the charge advises the jury that Appellant must serve a certain minimum sentence if the punishment "is for a term of not more than four years." Tex.CodeCrim.Pro. Art. 37.07(4)(a).

Errors in jury charges are reviewed using the standard set out in *Alamanza*. Brown v. State, 122 S.W.3d 794, 803 (Tex. Crim. App. 2003); see Alamanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). If a defendant does not object to the charge, reversal is required only if the harm is so egregious the defendant has not had a fair and impartial trial. Rudd v. State, 921 S.W.2d 370, 373 (Tex. App. – Texarkana 1996, pet. ref'd).

Appellant would show that the omitted portion of the mandatory jury charge in the instant case is that portion which specifically informs the jury that it cannot accurately be predicted how the laws will apply to the Defendant and, therefore, they are not to consider these instructions and attempt to apply them to this Defendant. While other appellate cases have analyzed the court's failure to include portions of the statutorily required language regarding the inclusion of "good conduct time",

those courts have held that those omitted instructions probably benefitted those Defendants. See Bolden v. State, 73 S.W.3d 428, 433-34 (Tex.App.-Houston [1st Dist.], pet. ref'd). Similarly, wherein the charge being reviewed omitted the instruction concerning the accrual of good conduct time but *did* inform the jury that it was not permitted to consider the extent that good conduct time may be awarded the Defendant, an appellate court has considered the error harmless. See Boones v. State, 170 S.W.3d 653 (Tex. App. - Texarkana, 2005). Appellant's case is completely opposite, and the harm is real.

In the instant case these omissions harmed Appellant because, unlike cases which denied relief because the omitted language probably helped the Defendant, the specific language omitted from the jury charge was intended to *benefit* a Defendant and instruct the jury *not* to consider these laws about parole in a Defendant's case. That is, in Appellant's case, the jury was *specifically told* about parole possibilities, *not* informed of the mandatory minimum, and further *not prevented* from using these in assessing Defendant's punishment. The jury was provided with an instruction that benefitted the State, yet did not instruct the jury *how* to apply the law – and *how not* to apply the law. Without such instructions, the jury was left with the complete and unfettered discretion to consider the parole laws in their deliberations – in direct conflict with the law.

## ARGUMENT

Appellant was convicted of the offense of Evading Arrest in a Motor Vehicle and the jury answered the special issue in the affirmative, thereby finding the motor vehicle was a deadly weapon. Appellant entered a plea of "True" to an enhancement paragraph alleging that he had previously been convicted of Manufacture/ Delivery of Controlled Substance. As such, the range of punishment was enhanced to a second degree felony punishable by confinement in Texas Department of Criminal Justice – Institutional Division for a term of not less than two (2) years nor more than twenty (20) years and an optional fine not to exceed $10,000. Appellant received a seventeen (17) year sentence from the jury.

The submitted jury instruction Appellant complains of on appeal is set out in its entirety as follows:

> "Under the law applicable in this case, the Defendant, if sentenced to a term of imprisonment may earn time off the sentence imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.
>
> It is also possible that the length of time for which the Defendant will be imprisoned might be reduced by the award of parole.
>
> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence

imposed, without consideration of any good conduct time he may earn. Eligibility for parole does not guarantee that parole will be granted.

You are further instructed that in fixing the Defendant's punishment, which you will show in your verdict, you may take into consideration all the facts shown by the evidence admitted before you in the full trial of this case and the law as submitted to you in this charge." (Clerk's Record Page 27).

This submitted charge is incomplete and incorrect. As set forth, the instruction failed to instruct the jury that the parole laws can not accurately be predicted in Appellant's case, and further, the instruction failed to instruct the jury that they were not to consider these parole laws as applied to Appellant.

This courts review an alleged jury-charge error in two steps: first, the court determines whether an error exists; and, if so, the court then evaluates whether sufficient harm resulted from the error to require reversal. Sponsler v. State, 2013 Tex. App. LEXIS 13812 (Tex. App. – Austin, 2013) citing Ngo v. State, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005); Swearingen v. State, 270 S.W.3d 804, 808 (Tex. App. – Austin 2008 pet. ref'd); see Sakil v. State, 287 S.W.3d 23, 25 (Tex. Crim. App. 2009). It is clear that the submitted charge is erroneous when compared to the language in the statute. See Tex.CodeCrim.Pro. 37.07(4)(a). Thus, this Court must determine the extent of the harm.

Under *Alamanza*, omission of an unrequested jury instruction "applicable to the case" calls for a new trial only when the defendant was greatly disadvantaged thereby. This degree of harm, sufficiently serious to be called "egregious," is present

whenever a reviewing court finds that the case for conviction *or punishment* was actually made clearly and significantly more persuasive by the error. See Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). (emphasis mine).

During the charge conference, no objections were made to the charge and there were no requested submissions or changes. Appellant would show this Court, however, that such failure to object does not waive the error. The judge's duty to instruct the jury on the applicable law exists even when defense counsel fails to object to inclusions or exclusions in the charge. Taylor v. State, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011). The jury charge should tell the jury what law applies and how it applies to this case. Delgado v. State, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). The trial judge is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." Id. Thus, the fact that no objection was made is not considered a waiver. It does, however, increase the burden on Appellant to show egregious harm as set out in *Alamanza*.

The complete statutorily required instruction in Article 37.07(4)(a) explains three distinct concepts. First, the instruction explains generally the concepts of "good conduct time" and "parole". Second, the instruction informs the jury about the defendant's eligibility for parole in terms of calendar years. Finally, the instruction states that no one can predict whether parole or good time might be applied to the defendant. See generally Sponsler, 2013 Tex. App. LEXIS 13812, at

24-5; referencing Luquis v. State, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002). Thus, the over-all purpose of the instruction is to inform jurors of these concepts as a general proposition, but to prohibit the jury from using its notions of parole or "good conduct time" in any calculation in assessing the appropriate punishment. Luquis, 72 S.W.3d 355 at 360.

In the case at bar, the omitted portion significantly affects both the second and third purposes set forth above. First, the erroneous charge fails to include language stating that the Defendant must serve a minimum of two years if he is sentenced to a term of four years or less. Secondly, the instruction completely fails to instruct the jury that it cannot accurately be predicted how the laws would be applied in this case. That is, it fails to instruct the jury that they are not to consider the effect of the parole laws in this case; it fails to instruct the jury that "it cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant"; and, finally, and perhaps most importantly, it fails to instruct the jury that they are "not to consider the manner in which the parole law may be applied to this particular defendant." Tex.CodeCrim.Pro. 37.07(4)(a).

There have been many instances whereby the trial courts have failed to include the Article 37.07 instruction as it relates to "good conduct time". Upon appellate review, however, the Courts often found that the Defendant did not suffer any harm. See Bolden v. State, 73 S.W.3d 428, 433-34 (Tex. App. - Houston [1st Dist.], pet.

ref'd). In one such case, the reviewing court specifically noted that the submitted instruction failed to instruct the jury about "good conduct time" but did inform the jury that it was "not permitted to consider the extent that good conduct time may be awarded to [appellant]." Boones v. State, 170 S.W.3d 653, 659 (Tex. App. – Texarkana, 2005). The Court further concluded that "[b]ecause we assume the jury follows the trial court's instruction, we must assume the jury did not consider the effect of the "good conduct time" on the defendant." Boones, 170 S.W.3d 653, at 660.

Texas courts have consistently recognized that the State, not the defendant, actually benefits from the parole and good time instructions prescribed in section 4(a), and that such instructions are designed to increase sentences assessed by juries. See Sanchez v. State, 243 S.W.3d 57 (Tex. App. Houston [1st Dist.] 2007, pet. ref'd) citing Bolden v. State, 73 S.W.3d 428 at 434 (Tex. App. – Houston [1st Dist.] 2002, pet. ref'd). It followed in such cases, then, that the exclusion may have actually benefitted the Defendant. But the instructions can also help the defendant because the jury could learn that the defendant would serve longer than it expected and could be influenced to assess less time. Williams v. State, 975 S.W.2d 375 (Tex. App. – Waco, 1998 pet. ref'd).

In the case at bar the statutorily required portion of the instruction which was omitted would have specifically advised, and instructed the jury, that they were not

to consider how these laws would affect Appellant because they were impossible to adequately predict. As set out in the statute, the jury is *first* told the law in general and *then* instructed that they are not permitted to consider the law as it applies to the defendant. Without this "offsetting" instruction, the jury was free to consider *exactly how* these parole laws would be applied in the defendant's case. That is, the jury was specifically *permitted* to consider these laws as they specifically applied to *this defendant*.

The instruction as established through the legislature clearly was intended to serve the third objective as illustrated by the Court of Criminal Appeals in Luquis – that no one can predict how parole or good conduct time might be applied to the defendant. Despite this objective, the charge submitted to the jury in Appellant's case provided a benefit to the State by informing the jury about the possibility and applicability of good conduct time, thereby creating in the minds of the jury the possibility of parole through good conduct time; but the jury was not instructed that they were not allowed to consider how the parole laws may be applied to this defendant.

Other courts have considered this omitted portion of the jury instruction as curative and mitigating factors to be considered when determining whether the giving of parole law instructions harmed an appellant. Arnold v. State, 786 S.W.2d 295 (Tex. Crim. App. 1990). That is, the curative instructions, as noted by previous

courts, "discourages juries from imposing greater sentences." See Grigsby v. State 833 S.W.2d 573(Tex. App. – Dallas, 1992, pet. ref'd). In such cases, the reviewing courts looked to the charge and determined that because of this curative instruction the defendant and was not harmed.

Similarly, the reviewing court in *Hernandez* failed to find harm, because as in other cases, the Court noted that the instruction did not include the portion of 37.07 which is meant to *increase* punishment, but did include a provision meant to *decrease* punishment – that is, the curative portion which instructs the jury not to consider parole in the defendant's case was present in *Hernandez*. Hernandez v. State, 2005 Tex. App. LEXIS 10076 (Tex. App. – Dallas, 2005). As Justice Johnson pointed out in his concurring opinion in *Luquis*, the final two paragraphs "are directed at the deliberations on sentencing and caution the jurors that release on parole and denial of release are neither predictable nor under their control or influence." Luquis v. State, 72 S.W.3d 355, at 368. These safeguards were not directed to the jurors in Appellant's case.

Therefore, because of the incomplete and erroneous instruction in the instant case, the jury was unmistakably lead to believe that they were *permitted* to consider the "good conduct time" instructions. That is, the jury could not think otherwise. They were told about the law in the charge and one would suspect that a rationale jury would follow the law and attempt to apply the instructions to the defendant in

this case. As has been pointed out, juries are presumed to follow the court's instructions. Boones, 170 S.W.3d 653, at 660.

Appellant also points out the significance of the erroneous exclusion of this safeguard in this case. First, it was shown at trial that counsel for the State specifically referenced parole in the argument to the jury when the prosecutor pointed out that the defendant served "short three years and something later . . . he was paroled." Reporter's Record Volume 4, Page 47. The prosecutor further argued, "You know, he had 15 years a few years ago, four years ago, that didn't stop him." R.R. 4, Page 48. On final closing, the other State's attorney stressed parole when she said "Another thing is I want you to think about is, he's on a 15 year sentence out on parole. Anything 15 years or less, on this offense, is a freebie." R.R. Vol. 4, Page 60.

It should further be pointed out that during deliberations the jury sent a note out to the presiding judge. They had one specific and straightforward request that states "please clarify Ms. Rumar's statement, that anything less than ten to 15 years is a freebie." Reporter's Record Volume 4, Page 61. The Court's response was that all the evidence is before you, continue with your deliberations. Id.

Furthermore, unlike the jury in *Bolden*, the jury in the instant case imposed a sentence at the higher range. One could argue that a sentence imposed at the lower end could indicate the defendant was not harmed by the erroneous instruction. No

such argument can be made when, as here, the sentence is near the maximum allowed.

Appellant would respectfully show this Court that several factors support reversal and remand for punishment. First, the instruction given was erroneous. Secondly, the omitted portion, when considering the case law, was designed as a curative and mitigating instruction to be used as an offset for the "good conduct time" and "parole" instruction. Third, the State focused a portion of its argument on the defendant's prior sentence and the amount of time he had served prior to being paroled. Finally, the sentence imposed was at the high end of the punishment range. For these reasons, Appellant would show that he was egregiously harmed.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully request this Honorable Court review the point of error on punishment set forth herein, determine that error occurred, and that Appellant was harmed by the error. Appellant further request this Court reverse the punishment assessed by the jury and grant such other relief to which Appellant may be entitled to in law and in equity so as to ensure that the basic tenants of a fair trial can be followed.

Respectfully submitted,

*John L. Youngblood*

JOHN L. YOUNGBLOOD
State Bar No.: 24003222
130 East Corsicana St., Ste. 300
Athens, Texas 75751
Telephone: (903) 675-5188
Facsimile: (903) 677-3902
Attorney for Appellant

## CERTIFICATE OF SERVICE

I, John L. Youngblood do hereby certify that a true and correct copy of Appellant's Brief was delivered via email to the Henderson County District Attorney's Office on this the __14th__ day of May, 2015.

*John L. Youngblood*

John L. Youngblood

## NO. 12-14-00263-CR

| | | |
|---|---|---|
| **JEFFREY ARLEN QUINN** | § | **IN THE TWELFTH COURT** |
| | § | |
| **VS.** | § | **OF APPEALS** |
| | § | |
| **THE STATE OF TEXAS** | § | **TYLER, TEXAS** |

## <u>CERTIFICATE OF COMPLIANCE</u>

I, John L. Youngblood, attorney for Appellant Jeffrey Arlen Quinn, hereby certify pursuant to Texas Rule Appellate Procedure 9.4(3), that Appellant's Brief on file with this Court contains 3816 words.

Respectfully submitted,

JOHN L. YOUNGBLOOD
130 East Corsicana Street
Suite 300
Athens, Texas 75751
Tel: (903) 675-5188
Fax: (903) 677-3902

By: _John L Youngblood_
JOHN L. YOUNGBLOOD
State Bar No. 24003222
Attorney for JEFFREY ARLEN QUINN

## CERTIFICATE OF SERVICE

This is to certify that on May 14, 2015, a true and correct copy of the above and foregoing document was served on the Henderson County District Attorney's Office, 109 West Corsicana Street, Suite 103, Athens, Texas 75751, by email.

JOHN L. YOUNGBLOOD